Caldwell, J.
The Gates Printing & Publishing Company gave to Bell & Davis on June 28, 1893, a mortgage for five hundred dollars. Two days thereafter and before due, the notes and mortgage were transferred to the defendant in error. Ip November,. 1893, Erma E. Gates, who is. the wife of William E. Gates, brought suit against the Gates Printing & Publishing Company and obtained a judgment, and thereafter, by consent of. certain creditors or interested parties., William E. Gates was' appointed receiver of the Gates Printing & Publishing Company. As such receiver, he, under the orders of the court, proceeded to sell the property in his hands, which included the-property that the defendant in error replevined in the common-pleas when this action was there, where this action was commenced ; and, upon the order of the court, he proceeded to sell’ the property, and he sold the same on December 19, 1893, to Carl Homan for the sum of five hundred dollars, and the sale-was approved by the court. Of said five hundred dollars, $150 was paid in cash, and $350 secured by chattel mortgage, and it is claimed Homan has since paid all of said amount except $100.
It is claimed that at the time said receiver was appointed" and said proceedings had in court by which the property was sold, one Davis was the owner of the mortgage for fiv$ hundred dollars, which is claimed now to be owned by the Merchant’s Banking & Storage Company, and that he consented to such receivership, and the proceedings being had" without any knowledge that he was the owner, that the only remedy open to the Merchant’s Banking & Storage Company was to come in and present its claim to the receiver and be- *726 paid out of the proceeds of the property that had been sold by the receiver.
After the Merchant’s Banking & Storage Company had brought its action, it filed a motion in the common pleas court for that court to grant an order allowing the receiver to be made a party to this action, and that order was granted, and a motion was thereafter made by Gates to vacate the order, and that motion was overruled and no exception was saved.
It is now claimed that the common pleas court had no jurisdiction to hear and try this action, as it was brought by the ' defendant in error.
We think it was in the discretion of that court to say whether the defendant in error should work out its rights through the receiver, which it could have done by refusing leave to sue the receiver, or by working it out in the way in which it was done.
There are many authorities cited in the brief of the defendant in error, and we have seen many others showing that under the circumstances existing here the mortgagee may proceed to replevin the property; and we think the court had full and complete jurisdiction to proceed as it did in this matter.
It is claimed that the court erred in not allowing all the proceedings taken by the receiver in sellinjg the property, to be offered in evidence.
.It is sufficient to say, that, if we are right on the former proposition, then the Merchant’s Banking & Storage Company was not a party to "that action and not bound by anything that was done therein; and, when it had leave to sue the receiver for the property in his hands either as receiver or individual, and' withheld from it by such receiver and other persons,' then the proceedings had by the receiver cannot in any' way bind the defendants in error, and there was no error in excluding those proceedings. Two questions arose to be submitted to the jury.
It seems' that the mortgage was properly filed in 1893, was not renewed by the defendant in error in 1894, but was renewed by the agent of another who cláimed to be the owner *727 thereof, and the same was true in 1895. In the years thereafter, the defendant in error renewed the mortgage.
It is claimed that the party who purported to be the owner of the mortgage, having given consent to the proceedings (before the receiver, and beinlg a party thereto, that the bank is now estopped from setting up its ownership at that time. These proceedings were had during the first year of the mortgage. And, if this proposition is true, then any one who takes a mortgage during the first year and before it is time •to renew it upon the records, may be cut off from any rights he has under that mortgage, by the action of-the mortgagee. And this would lead to the conclusion that the mortgagee after he has parted with the mortgage, may by his acts and conduct bind the assignee of the mortgage and may destroy his rights. This would be a dangerous doctrine and one that does not exist in law.
The first question above referred to, is this: The bank did not renew this mortgage in 1894 nor in 1895, but it was renewed as being owned by another, and that Homan, who bought this property for a valuable consideration, bought it without any knowledge that the bank was the owner of the same, and that, he, therefore, can be protected.
We may leave out of consideration tjie fact that this property was sold to Homan, December 19, 1893, before time to renew the same. And the question was, whether the bank owned this mortgage in 1894 and 1895, at the time it was renewed in the name of another, and if the bank was the owner and did not renew it, then Homan who was a purchaser is' ahead of the mortgage. Theie was some evidence, very slight, but nothing to contradict it, that the bank prior to 1894, undertook to convey this mortgage to another person, and that later on the arrangement for such conveyance having failed, the mortgage was transferred back to the company. This evidence, we say; is slight; but there was sufficient to go,to the jury, and the court submitted the question to the jury that if the bank had made a transfer to another person, who renewed that mortgage in 1894, and the mortgage was renewed again in 1895, and then the mortgage was returned to the company who became the owner of the same again, then ■ *728 the bank’s claim would be good as against Homan; but, if the jury should find that these transfers were not made, then the claim of the bank would not be good as against Homan: if he was a bona ñde purchaser and still retained the property.
There was evidence tending to show that Homan after he bought this property and paid his $150, turned it back to Gates as an individual and he did not propose to retain it under his sale. . As to just how this property was- turned', back, as to whether Gates took it upon the mortgage he held from Homan, or whether Homan turned it back no longer to be the owner of it, simply giving up his purchase and cancelling the purchase from the beginning, was in conflict in: ■the testimony. And this question, with proper instructions asto the law, was submitted to the jury. The jury then had! two questions to determine:
Whether or not the mortgage had been legally renewed' so that the bank could maintain its rights as against Homam if he was a purchaser; and, second,
Whether Homan gave up his purchase and surrendered the' property to Gates.
The verdict was a general verdict for the defendant in-error. It may have been upon either one of those propositions; and, if there is sufficient evidence to sustain it upon-either, this court cannot disturb the verdict of the jury.
We have read the entire evidence, and, while there is no» contradiction in the matter as to the ownership of the mortgage at the different periods of renewal, yet the evidence is-so slight and uncertain that it is a mere straw on which to-hang a verdict; and yet we ought not to say that the verdict is contrary to the evidence.
As to the other proposition, the evidence is somewhat conflicting. But we think the jury, if they founded their verdict upon. that, proposition, founded it correctly.
We- believe that this property was turned back to Gates,, and between him and Homan the purchase by Homan was-entirely cancelled, and that Homan was to be made whole by-some arrangement between him and - Gates.
The reading of Gates’ entire testimony upon this- question! *729 satisfies us that the jury were warranted in basing their verdict upon that testimony.
Many exceptions were taken during the trial to the court’s ruling upon the evidence. On page 19 cf the record, an exception is taken to the introduction of a copy of the mortgage, and the objection is confined to the fact that there may be on the original certain -endorsements that are not found on the copy; and the record shows what those endorsements might be. The record show-s clearly the points 'to be in favor of 'the defendants in the court below as to the points- which they expected would be shown by the original, and there w.as some evidence before the court that the original could not be found, that it had been mislaid. And we think there was no error to the prejudice of the defendants below.
Erma E. Gates was a witness, and it is claimed that there was error in the court refusing her testimony upon' a question of usury. On page 36, this question was asked her: “Did you have any conversation with him, that is, with Davis, in die year 1893, with reference to this chattel mortgage, and, if so, what was it? There was- an objection. The objection was sustained, and an exception taken, and an offer made to prove, and the proof would be that on December 19, 1893, shortly after the receiver’s sale of the property in controversy in this case, at that time Mr. Davis came info the offite of the company where this -sale had been had, and talked with her about the sale, and Mr. Davis said thkt he had expected to be present at the sale but had been detained and had heard that the property had sold for five hundred‘dollars, and that he was perfectly satisfied with the price the property had brought and with all that had been done. The purpose of this testimony was to prove by the admissions of Davis that he was then the owner of this mortgage.
There is no plainer rule than that an owner after he has parted with the property and has given title to another, can make no admissions that will bind his vendee. And that testimony was properly ruled out. And if it was sought to introduce this testimony from the fact that Davis in the, same way represented the Merchant’s Banking & Storage' Com *730 pany, yet the ¡evidence shows clearly that he was not an-officer of that company, nor did he hold any position in the-.company that would -enable him to bind it by his admissions.
On pages 37 and 38 is another exception. This question was asked of Mrs. Gates: “I understood you to say that yon-had some knowledge of ¡the sums that were advanced and the-interest that was paid from time to time upon the original indebtedness. Do you or do you not have knowledge upon that subject?” This was objected to; ¡the objection was sustained by the court; to which ruling of the court the defendant then and there excepted. And the counsel for the defendants- made a statement of what he expected the witness'would'answer; and that statement shows that there had been-various loans made just prior to this loan of June 28, 1893, upon which there had been -some payments, but none of those-loans were paid in full; and -then in June 28, 1893, the various; amounts remaining due upon those loans were brought into a-sum with $135 additional, to make the $500 note in question. And the purpose -of this proof was -to show that a considerable-portion of the note of $500 was composed of usurious interest.
The court refused the testimony upon the ground, very likely, that the bank was an innocent purchaser of this claim-before it became due, and, therefore, as to it, usury would not be a good -defense.
'This usury had been pleaded in the answer ,and denied by the bank. So that it was a proper matter for the defendants to prove, if such proof was admissible. Had the bank sued' upon -th-e notes, sued the makers or the receiver, it being an innocent purchaser of the notes before due, unquestionably this usury -could not be good against the bank. But this suit was upon the .mortgage.
The bank was seeking to recover th-e property, and as a-basis of that recovery, it was setting up the title it had to it' under its mortgage. A re-delivery bond had been given, and the case thereafter proceeded as one for money.
The amount the bank would be entitled to recover would be-the amount due it under its mortgage, if the property was-worth that much, and- whatever damages might be assessed.
The suit, then, being founded upon the mortgage entirely,, and the notes not being sued upon nor even placed in evi— *731 •deuce (which was not necessary), the question to be deter- : mined is, whether the assignee of a mortgage before it becomes due and without notice of usury in it, can defeat the usury?
In Baily v. Smith, 14 Ohio St., 396, it was determined iii this state that a mortgage is a chose in action and is not negotiable paper, and does not so adhere to the notes which are negotiable, as to become transferred with the notes in such a manner as to cut off all the equities of the maker of the mortgage.
In that case the Supreme Court held that fraud was not cut off by the transfer of the mortgage; and, in some other states, following the doctrine of the case of Baily v. Smith, supra, tlfe court has held that none of the equities of the mortr gagor are cut off by reason of the transfer of a mortgage by the mortgagee to an innocent bona fide holder before the debt was due. This doctrine is held not to extend to collateral equities nor equities existing in favor of third parties, but is held to exist as to the mortgagor because a person desiring to purchase the mortgage can always know who his mortgagor is, and can easily go to him and find out if he has any defense against the same and if he says he has none, he would thereafter be estopped from setting up any.
In Olds v. Cummings, 31 Ill., 188, the court held that the transfer of a mortgage by the mortgagee to an innocent purchaser for value, would not cut off the right of the mortgagor to set up usury in the same as against such assignee.
This we believe to be the rule in Ohio and must necessarily follow as the courts of other states have reasoned from the holding made in Baily v. Smith, supra.
It follows that the. ruling of the court upon this testimony, was erroneous and prejudicial, for which the judgment of the lower court will be reversed.
We have examined all the other errors complained of. We find them to be entirely without foundation, or under the ■other evidence given in the case, were not prejudicial.
We might, in this case, put the bank to an election to take the amount awarded it less the amount of usury, but the court has no definite idea of what the usury is. Two witnesses testified to its being about $125, but this is too uncer *732 tain for the court to undertake to name any sum which it will require the bank to deduct from its judgment in order to affirm the case. The only thing definite is what the attorney stated in his claim, hut that is not proof. So we see no other way than to reverse this judgment and remand the case for a new trial which is done.
He^enmueller & Bemis, for Plaintiffs in Error.